# OSCAR N. O'NEIL v. STATE.

No. A-9871. Feb. 24, 1943.

(134 P. 2d 1033.)

David Tant, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., and Walter Marlin, Asst. Co. Atty., both of Oklahoma City, for defendant in error.

BAREFOOT, J. Defendant, Oscar O'Neil, was charged in the district court of Oklahoma county with the crime of "Forgery in the second degree after former conviction of a felony," was tried, convicted, sentenced to serve a term of ten years in the penitentiary, and has appealed.

This charge is the outgrowth of the passing and uttering of the following check, as alleged in the information: "Laredo, Texas, May 12th, 1939. No. 88-31.

Laredo National Bank

"Pay to—Cash—or order $25.00 Twenty-five and no/100 Dollars U. S. Government Depository

"(Signed) J. W. Singleton."

"Endorsed:

"Beatrice E. Williamson

"Tradesmens National Bank

"Oklahoma National Bank."

The statute under which defendant was prosecuted is section 2125, Okla. Stat. 1931, Okla. Stat. Ann. 1941, Tit. 21, § 1577:

"Every person who sells, exchanges or delivers for any consideration any forged or counterfeited promissory note, check, bill, draft, or other evidence of debt, or engagement for the payment of money absolutely, or upon any contingency, knowing the same to be forged or counterfeited, with intent to have the same uttered or passed, or who offers any such note or other instrument for sale, exchange or delivery for any consideration, with the like knowledge and intent, or who receives any such note or other instrument upon a sale, exchange or delivery for any consideration with the like knowledge and intent, is guilty of forgery in the second degree."

The statute with reference to increasing the punishment where a former conviction of a felony is pleaded, is § 1817, Okla. Stat. 1931, Okla. Stat. Ann. 1941, Tit. 21, § 51:

"Every person who, having been convicted of any offense punishable by imprisonment in the penitentiary, commits any crime after such conviction, is punishable therefor as follows:

"1. If the offense of which such person is subsequently convicted is such that upon a first conviction an offender would be punishable by imprisonment in the penitentiary for any term exceeding five years, such person is punishable by imprisonment in the penitentiary for a term not less than ten years."

The case-made in this case was filed in this court on May 22, 1940. There has been unnecessary delay in disposing of this case. A number of reasons exist therefor. The brief of plaintiff in error was not filed until June 11, 1941. On November 6, 1941, a motion was made by the state to dismiss the appeal for the reason that the trial judge had not signed the certificate to the case-made within the time prescribed by the statute. On December 9, 1941, a motion was filed by defendant to amend the case-made, and on December 10, 1941, an order was made permitting the withdrawal of the case-made for the purpose of amending the same. On December 12, 1941, the case-made was refiled, as amended. On December 19, 1941, the state was given 30 days within which to file a brief. There was some question as to whether the Attorney General or the county attorney of Oklahoma county would file this brief, and to this day no brief has been filed, either by the Attorney General, or by the county attorney of Oklahoma county.

An opinion was prepared dismissing the appeal and affirming the case for the reason that the trial judge had not signed the certificate to the case-made within the time prescribed by the statute. When this error was corrected and the case-made refiled, that opinion was not entered.

For a reversal of this case, it is now contended:

"First: Point 1. (Germane to assignments of error 1, 2, 3 and 5) There was a fatal variance between the alleged forged instrument offered in evidence and the copy set out in the information in that the information alleged the forged instrument to have been signed by J. W. Singleton, and the alleged forged instrument offered in evidence, State's Exhibit No. 1, was signed J. M. Singleton.

"Second: Point 2. (Germane to 1st, 4th and 5th assignments of error) The information alleged the former conviction of defendant to have been obtained in case No. 100743 in the district court of Oklahoma County, Oklahoma, on July 29, 1936. The evidence introduced in support of this allegation showed a conviction in case No. 10743, District Court, Oklahoma County, Oklahoma, on the 29th day of September, 1936. Since these allegations related to matters of substance, the variance was fatal and the court should have sustained the defendant's motion for an instructed verdict.

'Point 3. (Germane to 1st and 5th assignments of error) The evidence was wholly insufficient to sustain the verdict of the jury for the reason

"(First) There was a failure of proof that the check was false or forged.

"(Second) If fictitious as alleged in the information, that it was signed by the defendant.

"(Third) That the defendant had guilty knowledge of its spurious character."

The record reveals that it is alleged in the information that the forged check which was uttered and passed, was signed *J. W. Singleton,* and the check offered in evidence was signed *J. M. Singleton.* (A photostatic copy of the check appears in the record, and it reveals a very close resemblance in the letters "W" and "M" in the signature.)

It is contended that this constituted a fatal variance between the allegations in the information and the proof. We have examined many authorities and find that they are in conflict. We have carefully read these cases, and have come to the conclusion that under the facts and circumstances, and the construction that has been placed upon criminal pleadings by this court, this is not a material variance, or one of substance, and that the court did not err in refusing to so hold. Oklahoma cases which seem to uphold the theory that this would be a material variance are: Stokes v. State, 12 Okla. Cr. 378, 157 P. 278; Logan v. State, 47 Okla. Cr. 266, 287 P. 1112; Moss v. State, 4 Okla. Cr. 247, 111 P. 950; and other states: Short v. State, 98 Tex. Cr. R. 472, 266 S. W. 419; State v. Horn, 93 Mo. 190, 6 S.W. 96; and State v. Taylor, 15 Kan. 420, 421.

The cases which support the theory that it would be an immaterial variance are: Wells v. Territory, 1 Okla. Cr. 469, 98 P. 483; Smith v. State, 34 Okla. Cr. 318, 246 P. 883; Dickson v. State, 28 Okla. Cr. 378, 231 P. 315; Leasure v. State, 46 Okla. Cr. 70, 283 P. 1023. Other states: People v. Smith, 103 Cal. 563, 37 P. 516; Beavers v. United States, 6 Cir., 3 F. 2d 860; and People v. Northcott, 46 Cal. App. 706, 189 P. 704, 705.

The second question raised, that the allegation in the information that the prior conviction was in case No. 100743, when the judgment introduced in evidence revealed it was case No. 10743, seems to us to be very technical. It is evident that this was a clerical error. When objection was raised thereto, the county attorney announced that there was one too many naughts, and asked that he be allowed to amend the information. While this was not formally done, we do not think this case should be reversed for this reason.

The question that has given us more serious trouble is the allegation in the information that the prior conviction was on the 29th day of July, 1936, and that the judgment introduced in evidence in support of this allegation showed to have been dated the 29th day of September, 1936.

In 58 A.L.R. page 20, et seq., and 82 A.L.R. 345, there appear elaborate notes which discuss statutes embracing penalty for second or subsequent offenses. These notes give citations and discussion of cases from all the different states, and the federal courts. We have read many of the cases, and especially those in which the questions here involved are more closely discussed. The statutes are not all similar, but the principles discussed are very similar.

Without giving the history of these statutes and a discussion of their constitutionality, which may be read in the notes above cited, we will be content to announce some of the general rules which may be arrived at by a reading of the cases closely bearing upon the issues in the instant case.

On page 64 of 58 A.L.R. this rule is announced by the annotator:

"It has been generally held that, in order to subject an accused to the enhanced punishment for a second or subsequent offense, or as an habitual criminal, it is necessary to allege in the indictment the fact of a prior conviction or convictions."

And on page 66, of 58 A.L.R., it is said:

"The reason or basis for this rule is well stated in Long v. State (Tex.) supra [36 Tex. 6], wherein the court held it necessary to allege in the indictment the fact of the former conviction or convictions, for whatever affects the degree of punishment must be alleged. In discussing the

necessity of this allegation in the indictment for the prior offense, the court said: 'The prisoner is not tried over again for his first offense but he has a right to know that the question of his having committed a first offense is to be presented to the jury, and, if it be shown that he did commit a former offense, that his punishment will be increased thereby, so that he may rebut this fact in any manner the law points out to him. The question of identity certainly may be raised, and he has a right to show that he is not the person named in the former record. He might also show that the court had no jurisdiction to try the case, or that the judgment of conviction had been set aside, a new trial granted him, and that he had been acquitted. How is he to make any of these defenses unless notified by the indictment of the intention of the state to hold him as guilty of a second or third offense? Lord Campbell, Ch. J., in an English case, observed: "A statement of a previous conviction does not charge an offense. It is only the averment of a fact which may affect the punishment. The jury do not find the person guilty of the previous offense; they only find that he was previously convicted of it, as a historical fact." Reg. v. Clark (1853) Dears. C. C. 198, 201, 169 Eng. Reprint, 694. Apply this principle to the case at bar. The indictment contains no reference to a former conviction. The prisoner is not put upon his guard, nor enabled to make any defense against this charge of a former conviction; that is thrown in as a make weight on the trial, and when the state had closed its other evidence, and he is forced to submit without the power of resistance. My understanding of the statute is simply this, that the legislature intended that this fact, like any other material fact shown against the prisoner, should be shown in strict accordance with the rules and principles of law; and I believe there is no other way in which this can be done, than by giving the defendant timely notice in the indictment that the fact will be shown against him on the trial.' "

The great weight of authority sustains the principles announced in this case, and approves the reasoning therein

stated. However, the application of just what should and should not be stated in the information is at variance in the different cases. And as to what constitutes a "variance" between the allegations of the indictment or information, there is also a conflict. Under the Oklahoma decisions, this general rule has been announced by the great majority of cases:

"A variance in a criminal case is an essential difference between the information and the proof, and a variance is not material unless it is such as might mislead the defense, or expose the defendant to the injury of being put twice in jeopardy for the same offense." Woods v. State, 22 Okla. Cr. 365, 366, 211 P. 519.

Applying this rule to the case at bar, the inquiry is made, How could the defendant have been misled in offering his defense? Certainly as to the typographical error in the number of the case he could not have been misled. As to the allegation in the information that he was charged as having been convicted on July 29, 1936, when the judgment and sentence introduced in evidence show the conviction to have been on September 29, 1936, we cannot see how this would have prejudiced him or caused him to be twice put in jeopardy for the same offense. Through all the cases which we have read, it has been deemed sufficient to allege the facts of the prior conviction, and the proof of the same by the proper records just as was done in the instant case. It will be observed that the judgment and sentence introduced in evidence in this case give the name of the court and the county in which the judgment and sentence was rendered, it being the identical county in which defendant was charged and was being tried in this case.

It will further be noted that the court clerk of Oklahoma county was placed upon the witness stand and posi-

tively identified the defendant as the person who had been charged, tried and convicted in the former case.

We recognize the rule that the burden of proof is on the state to prove the allegations of the information beyond a reasonable doubt. But when this burden is performed, either by direct or circumstantial evidence, the defendant then has the opportunity of presenting his defense. If the defendant had been misled or prejudiced by reason of the error in the number or date, then there would have been a material variance, but we cannot see how defendant was misled or prejudiced. Either of the dates alleged in the information was prior to the time on which he was charged in the case on trial, and a proof of either of these dates would have been sufficient to have sustained the allegations of the information as to his prior convictions. By the great weight of authority and best reasoned cases, it may be said that it is not necessary to allege the date at which the prior conviction occurred. Of course, it would be necessary to show that the conviction was prior to the charge upon which defendant was being tried. There is a line of decisions which hold that where a definite allegation is made in the information, it is necessary that the evidence conform strictly to the allegation as made, and this is especially true as to the allegations of an instrument which is fully set out therein. We see the force of this argument if the allegation is material to the issues involved and is necessary to prove. But if it is immaterial, we do not see the force of this reasoning.

Counsel for defendant cite the case of Childress v. State, 131 Tex. Cr. R. 487, 100 S. W. 2d 102, 103, and which is based upon the case of Morman v. State, 127 Tex. Cr. R. 264, 75 S.W. 2d 886. We concede that the Childress Case is directly in point, and sustains the con-

tention of defendant. However, in view of the decisions of our own court, we refuse to follow the rule announced in the Childress Case.

In the case of Wilborn v. State, 26 Okla. Cr. 437, 224 P. 214, 215, Judge Bessey, in writing the opinion, said:

"The defendant, in support of this alleged error, cites a number of decisions from the Texas Court of Criminal Appeals. The rules of practice in the Texas Court of Criminal Appeals are more technical than those followed by this court. Our statutes contemplate, and this court has uniformly held, that immaterial technicalities must be disregarded. An information should contain a statement of the acts constituting the offense, in ordinary and concise language, in such manner as to enable a person of common understanding to know what is intended. Section 2555, Comp. Stat. 1921, 22 O. S. 1941 § 401. No information is insufficient by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. Section 2564, Comp. Stat. 1921, 22 O. S. 1941 § 410. The name of the person whose signature was forged was a peculiar one. It is apparent that the defendant could not have been misled by the discrepancy in the spelling of the name. Moreover, it comes within the doctrine of idem sonans, as recognized by this court and by weight of authority in other appellate courts. Claycomb v. State (22 Okla. Cr. 315), 211 P. 429; 19 R.C.L. 1334."

In the case of White v. State, 58 Okla. Cr. 401, 54 P. 2d 214, 215, this court had before it a case of where a defendant was charged with burglary in the second degree. He was also charged as a second offender. The information charged that he had been convicted in Sedgwick county, Kansas, of both burglary and grand larceny and had served a term in the State Penitentiary at Lansing. Certified copies of the record of the prior conviction, judgment and sentence were admitted in evidence.

It was contended by counsel for defendant that the proof showed that the defendant had been convicted of grand larceny and not of burglary, and that there was therefore a variance between the proof and the allegations of the information. Judge Edwards, in disposing of this contention, said:

"The journal entry of judgment admitted by stipulation recites a conviction for grand larceny and a sentence to the Kansas Penitentiary for a term of five years.

"It is therefore evident that there is no variance in the charge for which defendant was convicted in the state of Kansas and in the information here alleging the prior conviction, and even if there were variance we think it would be immaterial under the provisions of article 6, chap. 15, Okla. Stat. 1931, 21 O. S. 1941, §§ 51 to 54."

While the facts in that case are not exactly as those in the case here under consideration, the reasoning is the same.

In the case of Jacobs v. United States, 58 App. D. C. 62, 24 F. 2d 890, 891, the Court of Appeals of the District of Columbia held:

"But such an averment of prior conviction does not charge an offense. As stated by Lord Campbell in the case of Reg. v. Clark, 20 Eng. L. & Eq. Rep. 582: 'It is only the averment of a fact which may affect the punishment. The jury do not find the person guilty of the previous offense; they only find that he was previously convicted of it, as an historical fact.' It is apparent, we think, that Jacobs could have suffered no prejudice because of the averment in the indictment that his prior conviction was on the 7th, instead of on, as the record disclosed, the 17th day of April, 1923. This is even more apparent, when it is considered that a similar discrepancy between the date upon which the second offense was alleged to have taken place and the date of its actual occurrence would not have constituted a variance."

118

In McCarren v. United States, 7 Cir., 8 F. 2d 113, the court said:

"The essential thing is that the jury determine whether defendant has been previously convicted."

As to the contention that the evidence is insufficient to sustain the judgment and sentence, we cannot agree.

The record reveals that the defendant resided in the State of Texas; that he was in Oklahoma City during the month of December, 1938, and was taken to the Detention Hospital on December 23, 1938, as a public patient, and released therefrom on January 5, 1939. During this time he met the witness Beatrice E. Williamson, who was a widow with four children, and a nurse at the hospital. He made several visits to the hospital to see her after he was released, and came to see her at least 12 or 15 times between January and May, in that year, and had a number of dates with her. On May 11, 1939, she went from the hospital to the Wells Roberts Hotel with him. While there, in the lobby of the hotel, she was introduced by O'Neil to a man by the name of Singleton. Something was said by O'Neil about getting a check cashed. The next morning, May 12, 1939, the defendant went to the hospital and had with him the check that has heretofore been quoted, and asked Mrs. Williamson to cash the same. She took it to the grocery store where she traded, indorsed it, and secured the sum of $25 thereon, and gave the money to the defendant.

There was introduced in evidence four other checks which the defendant got Mrs. Williamson to indorse and give him the money thereon. All of these checks were returned unpaid, and bore the signatures of various parties. The total amount of money received by defendant as a result of uttering and passing these forged checks amounted to over $100. The previous conviction of de-

fendant was in Oklahoma county, and was the result of passing a forged check in the sum of $1,600, and he was sentenced to serve two years in the penitentiary for this offense.

Under this state of facts, it cannot be contended that the evidence is insufficient to sustain the conviction.

The evidence clearly shows that the defendant deliberately formed a plan and scheme to defraud Mrs. Williamson, and that he secured her confidence, and with deliberate design secured the money from her. When the checks were returned unpaid, the grocer charged them back to her account, and she was paying them out at the time of this trial.

It may be stated that during the trial it was contended by defendant that he had made an effort to repay the money, but by reason of not being able to pay the full amount of the checks, his tender had been refused. During the trial, and while the defendant was on the witness stand, the county attorney permitted him to pay the complaining witness the sum of $103.50, the amount of the checks, but not quite enough to pay all of the costs. This was done in the presence of the jury trying the defendant.

Of course, the payment of this money after the filing of the information could not defeat the charge against him, as in embezzlement cases it could only be considered for the purpose of mitigation of the punishment. The minimum punishment being ten years in the penitentiary, the jury could give very little relief.

The judgment and sentence in this case was for a term of ten years. This is the minimum punishment provided by the statutes for the crime for which defendant was convicted, taking into consideration the fact that he

had been previously convicted of committing a felony. It is therefore impossible for this court to modify the judgment and sentence. We have no hesitancy in saying that had we the power to do so, the sentence would be reduced to a period of five years in the penitentiary.

For the reasons above stated, the judgment and sentence of the district court of Oklahoma county is affirmed.

JONES, P. J., and DOYLE, J., concur.