Ralph Thomas **CARPENTER**, a/k/a Ralph Tommie Carpenter, a/k/a Ralph Tommy Carpenter, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–74–484.

Court of Criminal Appeals of Oklahoma.

Jan. 10, 1975.

Jerry R. Babbitt, Lawton, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Ross N. Lillard, III, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Ralph Thomas Carpenter, a/k/a Ralph Tommie Carpenter, a/k/a Ralph Tommy Carpenter, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Comanche County, Oklahoma, Case No. CRF–73–539, for the offense of Rape in the First Degree, in violation of 21 O.S., § 1114. His punishment was fixed at a term of twenty-five (25) years in the State penitentiary. From said judgment and sentence a timely appeal has been perfected to this Court.

At the trial Sieglinde Black testified that she was employed at the Sheridan Drive-In located on Sheridan Road in Lawton, Oklahoma. She testified that she was an alcoholic and had, on certain occasions, stayed at Fort Supply for treatment. On August 31, 1973, she worked until approximately 5:00 p. m. At this time she went to a funeral home to view a deceased friend's body. Upon returning from the funeral home Mr. Willis Mathis, her employer and landlord, gave her $25.00 to buy groceries. On her way to purchase groceries she decided to walk to the K & B Bar, which is located approximately two and one half blocks north on Sheridan Road, for a beer. While en route the defendant approached her and asked if he could walk with her to which she responded in the affirmative. The two walked as far as Peck's Motor Company parking lot where the defendant assaulted and raped Ms. Black between two cars in the parking lot. She further testified that she was unable to "fight him

off" and was forced to submit. A car approached and the defendant ran from the scene. Ms. Black then went to the K & B Bar barefooted in an attempt to call her employer. Being unable to reach him as he had already closed the drive-in, she walked home and related the incident to Mr. Mathis, whereupon the police were called and an investigation ensued. She finally testified that she had consumed two or three beers before leaving the drive-in. She had known the defendant for a few years and had never had any previous sexual relations with him. She identified the defendant, Ralph Carpenter, as her assailant.

Gerald Chadwick, Police Officer for the Lawton Police Department, testified that on the night in question he was summoned to Willis Mathis' residence for the purpose of investigating an alleged rape. He interviewed Ms. Black, who appeared rather "scratched up." He subsequently went to the scene and found a pair of bathroom slippers and a partial package of cigarettes which Ms. Black had reportedly lost during the rape. Both exhibits were identified as State's Exhibits #1 and #2.

Detective Charles Connelly of the Lawton Police Department testified he interviewed Ms. Black on September 1, 1973. During this interview Ms. Black stated that the defendant was the person who committed the act.

Ms. Black was recalled and identified State's Exhibit #1 as being her house shoes she was wearing on the night in question.

For the defense R. J. Carpenter, the defendant's brother, testified he had known Ms. Black for approximately seven years and had seen Willis Mathis physically strike her in the Sheridan Drive-In on various occasions.

Jean Wilkerson testified she had previously known Ms. Black and that Ms. Black had a drinking problem.

Douglas Aldridge, Lawton Police Officer, testified he interviewed Ms. Black on the night in question. He stated she ap-

peared bruised and scratched. During the interview she related the details of the rape.

■ Defendant first contends that the trial court erred in admitting evidence of other crimes. The defendant contends that the prosecutor elicited the fact that the defendant had previously been incarcerated in the State penitentiary by asking the prosecutrix the following questions on redirect examination:

"Q. Mrs. Black on direct you testified at the time it happened that the man that committed this act on you made a statement to you to the effect if I am not mistaken, if you don't let me do it from the front, I'll get you in the back. Then on cross you said that he said something else. What else did he say?

"A. He said I want you to have my baby.

"Q. And that's all he said?

"A. That's all he said fifteen times over.

"Q. And nothing else?

"A. I want you to have my baby. That's when I found out he was in the penitentiary because he said I just got out and I don't care if I go back." (Tr. 45)

It is our opinion that the complained of statement was properly admitted as part of the res gestae, see Goodner v. State, 32 Okl.Cr. 192, 239 P. 928 (1925). However, assuming arguendo that the statement was not admissible it is our opinion that any error was invited. On cross-examination of the prosecutrix by the defense attorney, we find the following questions and answers:

"Q. O.K., so drinking to you doesn't mean beer; it means whiskey, is that right?

"A. Yeah.

"Q. How many beers had you had?

"A. I—not too many; maybe two or three.

"Q. O.K., as you approached this car lot, what happened?

"A. Well, he grabbed me, and he pulled me down. He said, 'I want you to have my baby. I've been in the peni—'" (Tr. 30 and 31)

We therefore find this proposition to be without merit. See Rapp v. State, Okl.Cr., 418 P.2d 357 (1966) and Kennedy v. State, Okl.Cr., 400 P.2d 461 (1965).

■ Defendant's second proposition asserts the trial court erred in not allowing him to introduce evidence as to the character of the prosecutrix. Defendant contends that it was error for the trial court to sustain the State's objections to certain questions asked of defense witnesses concerning the prosecutrix' character. The defendant points out two occasions wherein the State objected to defense attorney's questions and the court sustained the objection. At page 59 of the transcript the following is found:

"Q. Do you have an opinion of Sieglinde Black's moral character?

"MR. CARTER: Objection.

"THE COURT: Sustained."

And at page 64 of the transcript:

"Q. What can you tell the jury about Sieglinde Black's character?

"MR. CARTER: Objection.

"THE COURT: Sustained."

It therefore appears that the defense attorney was attempting to impeach the prosecutrix' testimony by eliciting opinions as to her moral character from the defense witnesses. This Court in the case of Riddle v. State, 92 Okl.Cr. 397, 223 P.2d 379 (1950) held in syllabi 7 and 8:

"7. The impeachment of a witness should be as to her credibility, her reputation for truth and veracity, rather than to her moral character.

"8. The trial court properly sustained objections to cross-examination of state's witness wherein questions were asked for the purpose of showing a want of

morality of the female witness, as such matter was not relevant to any issue before the court."

We therefore find the trial court properly sustained the State's objections to the above questions.

 The defendant further contends under this proposition that it was error for the trial court to allow the State to recall the prosecutrix for the purpose of identifying State's Exhibit #1. The record reveals the recall of this witness was prior to the resting of the State's case. This Court in Carr v. State, 91 Okl.Cr. 94, 216 P.2d 333 (1950) quoted with approval Mathies v. State, 56 Okl.Cr. 308, 38 P.2d 588 (1934) stating:

"'The order in which testimony shall be produced rests largely in the discretion of the trial court.'"

It therefore appears that the order in which testimony shall be taken is a discretionary matter with the trial court and in the instant case we find no abuse of discretion.

 The defendant's third proposition asserts that the verdict is not supported by sufficient evidence and is contrary to law. We have consistently held that where there is competent evidence in the record from which the jury could reasonably conclude that the defendant was guilty as charged, the Court of Criminal Appeals will not interfere with the verdict, even though there is a sharp conflict in the evidence and different inferences may be drawn therefrom, since it is the exclusive province of the jury to weigh the evidence and determine the facts. See Jones v. State, Okl.Cr., 468 P.2d 805 (1970).

 Defendant's final proposition asserts that the punishment is excessive. We need only observe that the punishment is within the range provided by law, and does not shock the conscience of this Court. See Turner v. State, Okl.Cr., 479 P.2d 631 (1971).

For the foregoing reasons it is our opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs in part and dissents in part.

BRETT, Judge (concurring in part and dissenting in part).

I concur that there was probably enough evidence to submit to the jury and insofar as the jury found defendant guilty, that the conviction should be affirmed; but, I dissent to the sentence imposed because I believe under the facts presented the sentence is excessive.